# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GLOBAL CHARTER SERVICES, LTD., | ) | Case No.: 09- |
| | ) | |
| Debtor[1]. | ) | |

**DEBTOR'S MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND BANKRUPTCY RULE 4001 (i) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (ii) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (iii) AUTHORIZING USE OF CERTAIN CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION, (iv) GRANTING OTHER RELATED RELIEF AND (v) SCHEDULING AN INTERIM AND FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Global Charter Services, Ltd. (the "Debtor" or "Global Charter"), by and through its undersigned proposed counsel, hereby moves this Court for the entry of an order pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure 4001 and 9014, (i) authorizing the Debtor to enter into a post-petition financing transaction, (the "DIP Financing") (ii) granting liens and superpriority claims, (iii) authorizing the Debtor to use cash collateral pursuant to Bankruptcy Code § 363 and provide adequate protection, (iv) granting other related relief, and (v) scheduling an interim and final hearing pursuant to Bankruptcy Rule 4001 (the "Motion"). The facts and circumstances supporting this Motion are set forth in the concurrently filed Declaration of Robert Anderson in Support of First Day Motions (the "Anderson Declaration"). In further support of this Motion, the Debtor respectfully states as follows:

---

[1] The Debtor's mailing address is Suite 1100, 200 West Adams Street, Chicago, Illinois, 60606 and the last four digits of the Debtor's federal tax identification number are 3222.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought are 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Fed.R.Bankr.P. 4001.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

4. The Debtor is currently operating its businesses and managing its properties as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5. As of the filing of this Motion, no trustee, examiner or committee has been appointed in this chapter 11 case.

6. For a more detailed description of the Debtor, its operations, and the events leading to the filing of its chapter 11 case, the Debtor respectfully refers the Court to the Anderson Declaration.

## RELIEF REQUESTED

7. By this Motion, the Debtor requests an order: (A) authorizing the Debtor to obtain post-petition financing (the "Post-Petition Financing") from GCS Group, LLC (the "Lender") (i) up to the aggregate principal amount of $300,000.00, pursuant to the Interim Order annexed hereto as Exhibit A, (the "Interim Order") and (ii) up to the aggregate principal amount of $500,000.00 pursuant to the terms of a final order (the "Final Order") and all other documents

executed and delivered in connection therewith or which otherwise may be required from time to time or reasonably requested by Lender (collectively, the "Loan Documents"); (B) authorizing the use of cash collateral of Lender and granting adequate protection; (C) granting Lender a superpriority administrative expense claim pursuant to § 364(c)(1) and security interests and liens pursuant to §§ 364(c)(2) and (3) and (d); and (D) giving notice of and scheduling an interim and final hearing (the "Final Hearing") pursuant to Bankruptcy Rule 4001.

## BASIS FOR RELIEF

### A. The Debtor's Post-Petition Financing Needs

8. The Debtor has an immediate need to obtain financing and use cash collateral in order to permit, among other things, the continuing operation of the Debtor's business. The Debtor has determined, in the exercise of its sound business judgment, that it requires, among other things, a post-petition credit facility in the amount of up to $500,000.00. Without the proposed financing, the Debtor will not have the funds necessary to pay payroll, payroll taxes, overhead, rent, utilities and other expenses necessary for the continued post-petition operations of the Debtor's businesses and the management and preservation of the Debtor's assets and properties. The relief requested in this Motion is necessary to avoid immediate and irreparable harm and injury to the Debtor's estate.

9. As set forth herein, and in the Anderson Declaration, the Debtor has attempted but was unable to obtain unsecured credit allowable under Section 503(b)(1) of the Code, or pursuant to Sections 364(a), (b), or (c) of the Code. Under the circumstances, no other source of financing exists on terms more favorable than those offered by the Lender pursuant to the DIP Financing.

10. The terms of the Loan Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration. The DIP Financing has been negotiated in good faith and at arm's-length by the Debtor and the Lender. Any credit extended and loans made to the Debtor by the Lender pursuant to the Loan Documents are extended, issued and made by the Lender in good faith, as that term is used in Section 364(e) of the Code, and in express reliance upon the protections afforded by Section 364(e) of the Code.

B. **The Proposed DIP Financing**

11. The terms of the proposed DIP Financing (the "DIP Financing") are more specifically set forth in the credit agreement (the "Credit Agreement") and proposed Interim Order (the "Interim Order") negotiated by the Debtor and the Lender submitted herewith.

**1. Description of the Proposed Terms of the DIP Credit Agreement**

12. Pursuant to Federal Rule of Bankruptcy Procedure 4001 and Del.Bankr.LR. 4001-2(a)(ii), the terms of the DIP Financing and use of Cash Collateral as set forth in the Interim Order are summarized as follows:[2]

Lender. GCS Group, LLC

Authorized Borrowings. The Debtor is also authorized to borrow from the Lender[3] up to the principal outstanding amount of $300,000.00 on an interim basis and $500,000.00 in the aggregate as required to pay expenses in compliance with the Budget. The Debtor shall be authorized to borrow money and spend money solely in compliance with the Budget and as expressly set forth in the Interim Order. Compliance with the Budget shall be measured monthly on a cumulative basis.

---

[2] The summary of the terms of the proposed DIP Financing is qualified in its entirety by the actual terms of the Interim Order. In the event of any inconsistency between the summary provided in this Motion and the Interim Order, the terms of the Interim Order shall govern.

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Interim Order.

Terms of Borrowings (Fees; Interest; Attorneys' Fees; and Maturity). The DIP Financing shall bear interest at a per annum rate of 12%. The Debtor is required to pay the Lender's professional fees. The Debtor's authority to use cash collateral and to borrow funds under the DIP Order shall continue until the Termination Date, which is defined as the earlier of (a) thirty days after the entry of the Interim Order by the Bankruptcy Court, unless a Final Order is entered before such thirty day period expires, (b) 150 days after the Petition Date, or (c) the acceleration of the Loan and the termination of the commitments made in the DIP Financing Agreement (subject to the payment of Permitted Fee Expenses (as defined below) incurred prior to the Termination Date).

Priority and Liens. Pursuant to 11 U.S.C. §§ 364(c)(2), (c)(3) and (d), as security for the DIP Financing, the Lender is granted liens (the "Post-Petition Liens") in all assets of the Debtor, including without limitation, all currently owned or after-acquired property and assets of the Debtor of any kind or nature (excluding Avoidance Actions, except for claims under 11 U.S.C. § 549 and the proceeds thereof) (the "Post-Petition Collateral") subject and subordinate only to (i) liens that are valid, binding, enforceable and perfected in the Pre-Petition Collateral existing on the Petition Date (the "Permitted Liens") other than the Pre-Petition Liens of the Lender; and (ii) the Permitted Fee Expenses. The Post-Petition Liens shall be senior to the Adequate Protection Liens and the Pre-Petition Liens. As additional security, the Post-Petition Loans shall, in accordance with 11 U.S.C. § 364(c)(1), have priority over all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code (such priority, "Superpriority"), subordinate only to the Permitted Fee Expenses.

As adequate protection of the Pre-Petition Lender's interests in the Pre-Petition Collateral (the "Pre-Petition Liens"), including Cash Collateral, pursuant to 11 U.S.C. §§ 361, 363 and 552(b), the Pre-Petition Lender is granted additional and replacement liens in all property of the Debtor's estate (excluding Avoidance Actions, except for claims under 11 U.S.C. § 549 and the proceeds thereof), including the Post-Petition Collateral, only to the extent of any <u>decrease</u> in value of the Pre-Petition Lender's interests in the Pre-Petition Collateral occurring subsequent to the Petition Date (the "Adequate Protection Liens"). The Adequate Protection Liens (as defined below) are subject and subordinate only to (i) Permitted Liens other than the Pre-Petition Liens of the Pre-Petition Lender; (ii) the Permitted Fee Expenses; and (iii) the Post-Petition Liens. To the extent that the Adequate Protection Liens do not provide adequate protection of the Pre-Petition Liens in the Pre-Petition Collateral, the Pre-Petition Lender shall have a 507(b) Claim entitled to priority over all other claims allowable under 11 U.S.C. § 507(a), but subordinate to the Permitted Fee Expenses and the Lender's Superpriority claims.

Application of Proceeds. All proceeds resulting from the sale, collection or other disposition of the Debtor's assets shall be applied to toward the prepayment of the DIP Financing Obligation, in accordance with the Interim Order and any Final Order.

Termination Events; Termination Date. On the Termination Date, all Obligations of the Debtor to the Lender shall become due and payable without further notice. Any obligation of the Lender to make any loans or advances shall be terminated. The Lender

may terminate the DIP Financing upon the earliest to occur of any of the following events (any such event shall be referred to as a "Event of Default"):

a) If any representation or warranty made by Debtor to Lender under or in connection with this Agreement, shall prove to have been false or misleading in any material respect when made or delivered; or

b) If any default shall be made in the payment of any (i) Fees, interest on the Loans or other amounts payable hereunder when due (other than amounts set forth in clause (ii) hereof) or (ii) principal of the Loans, when and as the same shall become due and payable, whether at the due date thereof (including the Prepayment Date) or at a date fixed for prepayment thereof or by acceleration thereof or otherwise; or

c) If the Debtor defaults in the due observance or performance of any covenant, condition or agreement contained in Section 6 or 7; or

d) If Debtor shall fail to deliver the Budget or Variance Report when due and such default shall continue unremedied for more than three (3) Business Days; or

e) If Debtor defaults in the due observance or performance of any other covenant, condition or agreement to be observed or performed pursuant to the terms of the Credit Agreement, any of the Bankruptcy Orders or any of the other Loan Documents and such default shall continue unremedied for more than three (3) Business Days; or

f) If the Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or if Debtor files a motion or other pleading seeking the dismissal of the Case under Section 1112 of the Bankruptcy Code or otherwise; a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code shall be appointed in the Case and the order appointing such trustee, responsible officer or examiner shall not be reversed or vacated within 30 days after the entry thereof; or an application shall be filed by Debtor for the approval of any other Superpriority Claim or other charge of any kind (other than the Carve-Out) in the Case which is *pari passu* with or senior to the claims of Lender against Debtor hereunder, or there shall arise or be granted any such *pari passu* or senior Superpriority Claim or other charge of any kind or the Bankruptcy Court shall enter an order terminating the use of cash collateral under the Existing Agreements; or

g) If the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code, as may be extended from time to time, granting relief, to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) or any other enforcement of security on any assets of Debtor which have a value in excess of $100,000 in the aggregate; or

h)  If a Change of Control shall occur; or

i)  If any material provision of any Loan Document or Order shall, for any reason, cease to be valid and binding on the Debtor, or if the Debtor shall so assert in any pleading filed in any court; or

j)  If an order of the Bankruptcy Court shall be entered reversing, staying for a period in excess of 10 days, vacating or (without the written consent of the Lender) otherwise amending, supplementing or modifying any of the Bankruptcy Orders in a manner that is adverse to Lender, or terminating the use of cash collateral by Debtor pursuant to the Bankruptcy Orders or amending or modifying the adequate protections granted to the Existing Lenders pursuant to any of the Bankruptcy Orders; or

k)  If any judgment or order in excess of $100,000 (exclusive of any judgment or order the amounts of which are fully covered by insurance (less any applicable deductible) and as to which the insurer has acknowledged its responsibility to cover such judgment or order) as to any post-petition or post-filing obligation shall be rendered against Debtor and the enforcement thereof shall not have been stayed; or

l)  If any non-monetary judgment or order with respect to a post-petition or post-filing event shall be rendered against Debtor which has or could reasonably be expected to have a Material Adverse Effect; or

m)  If, except as permitted by the Bankruptcy Orders or as otherwise agreed to by Lender, the Debtor shall make any Pre-Petition Payment other than Pre-Petition Payments authorized by the Bankruptcy Court (x) in accordance with "first day" orders, (y) in connection with the assumption of executory contracts and unexpired leases, and (z) in respect of accrued payroll and related expenses and employee benefits as of the Petition Date; or

n)  If it shall be determined (whether by the Bankruptcy Court or by any other judicial or administrative forum) that Debtor is liable for the payment of claims arising out of any failure to comply (or to have complied) with applicable Environmental Laws and Environmental Permits, the payment of which has or could reasonably be expected to have a Material Adverse Effect, and the enforcement thereof shall not have been stayed; or

o)  If the Debtor is enjoined, restrained, or in any way prevented by court order from continuing to conduct all or any material part of its business, and the enforcement thereof shall not have been stayed; or

p)  If Debtor shall file, support or fail to oppose a motion seeking, or the Bankruptcy Court shall enter, an order in the Case (i) approving additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Agreement, (ii) granting any lien (other than liens permitted the Bankruptcy Orders) upon or affecting any Collateral which are *pari passu* or senior to the liens on the Collateral in favor of Lender, (iii) granting any claim priority senior to or *pari passu* with the claims of Lender under the Loan Documents (other than to the extent

permitted pursuant to the terms of the Bankruptcy Orders) or any other claim having priority over any or all administrative expenses of the kind specified in Section 503(b) or Section 507(b) of the Bankruptcy Code, or (iv) granting any other relief that is adverse to Lender's interests under any Loan Document or its rights and remedies hereunder or their interest in the Collateral; or

q) If the Official Creditors' Committee or any party in interest shall commence, or the Debtor or any officer or employee of Debtor commences or joins with or actively supports any Official Creditors' Committee or any other party in interest in the Case, a suit, action or contested matter against Lender or affecting the Collateral, or joins or actively supports a suit, action or contested matter against the Lender or that affects the Collateral, that sets forth (a) a claim in excess of $10,000, (b) a claim or legal or equitable remedy which seeks reduction, setoff, subordination or any recharacterization of the claim or lien of Lender; or (c) a claim that could reasonably be expected to have a Material Adverse Effect (it being understood that reclamation claims shall not be deemed to have a Material Adverse Effect) or could reasonably be expected to have a material adverse effect on the rights and remedies of Lender under any Loan Documents or the collectability of all or any portion of the Obligations or the Existing Indebtedness; or

r) If the entry of an order in the Case confirming a plan of reorganization or a plan of liquidation that does not contain a provision for termination of all Loan commitments under this Agreement and repayment in full of the Obligations under this Agreement and the Existing Indebtedness on or before the effective date of such plan; or

s) If the Final Order is not entered immediately following the expiration of the Interim Order and, in any event, within 30 days following the Petition Date; or

t) If other than payments permitted pursuant to this Agreement, the Interim Order or the Final Order, as applicable, the Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any Indebtedness incurred prior to the Petition Date; or

u) If there is a payment of, or application for authority to pay, any prepetition claim without Lender's prior written consent or pursuant to an order of the Bankruptcy Court after notice and a hearing unless otherwise permitted under this Agreement; or

v) If any claim or claims under Section 506(c) of the Bankruptcy Code against or with respect to any Collateral other than the Carve-Out is allowed; or

w) If absent the written consent of Lender, the Bankruptcy Court enters an order under Section 363 or 365 of the Bankruptcy Code authorizing or approving the sale or assignment of a material portion of any of Borrower's assets; or

x) If an order is entered in the Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement.

a. Notwithstanding the occurrence of an Event of Default, the Lender may elect not

to terminate the Debtor's authority to borrow funds hereunder, to waive defaults hereunder, to forbear from the exercise of rights and remedies hereunder and under the Pre-Petition Loan Agreement and, subject to Court approval and the approval of the Lender, to modify the Termination Events described herein. Any such continued extension of financial accommodations shall be without prejudice to the Lender's ability to terminate funding and shall not constitute a course of dealing obligating the Lender to make or continuing making financial accommodations at any time in the future. Notwithstanding the foregoing, the Debtor's right to borrow Post-Petition Loans and to use Cash Collateral under this Interim Order or any Final Order shall terminate (the "Termination Date") upon: (i) the Maturity Date (as defined in the Interim DIP Order); (ii) the occurrence of Termination Event "(iv)" or "(x)" above, or (iii) the expiration of the fourth (4th) business day following the Lender's transmission to counsel for the Debtor and counsel for any official statutory committee of a notice (by email or facsimile) stating that a Termination Event has occurred (during which four (4) business day period the Debtor may cure any default and/or the Debtor or any official statutory committee may seek an order finding that no such Termination Event has occurred).

Remedies Upon Termination Date. Upon a Termination Date, the Lender shall be entitled to exercise all of its rights and remedies under the Interim Order or applicable law in order to effect repayment of the Pre-Petition Indebtedness or the DIP Financing, including without limitation, foreclosing upon and selling all or a portion of the Pre-Petition Collateral or Post-Petition Collateral. The Lender shall have the right, without any further action or approval of this Court, including, without limitation, any further action to lift the automatic stay provided by section 362 or the discharge injunction under section 524 of the Bankruptcy Code, to exercise such rights and remedies as to all or such part of the Pre-Petition Collateral and the Post-Petition Collateral as the Lender shall, in its sole discretion, elect.

Carve-Out. Prior to the Termination Date, the Debtor shall be permitted to use the Post-Petition Loans to pay (up to the amounts set forth in the Budget) the statutory fees of the United States Trustee and compensation and reimbursement of expenses to professional persons employed in the Chapter 11 Cases under section 327 and/or, if applicable, 363 of the Bankruptcy Code, as the same may be due and payable, to the extent such expenses constitute Permitted Fee Expenses as defined in the Interim Order. Permitted Fee Expenses shall, subject to the Budget, be paid, as and when allowed or permitted to be paid by Court order, with respect to any professional person who holds a retainer, to that professional person after exhaustion of any unused balance of such retainer and, with respect to any professional person who did not receive a retainer or who has exhausted any retainer, out of the proceeds of the Post-Petition Collateral or the proceeds of the Pre-Petition Collateral generated, in either event, in the Chapter 11 Cases prior to the application of such proceeds to the Post-Petition Loans, the Pre-Petition Indebtedness or any other obligations of the Debtor and/or its estate.

Admissions; Investigations. The Debtor makes certain admissions regarding the amount, validity, perfection, enforceability and unavoidability of the Pre-Petition Indebtedness

and the Pre-Petition Loans. Absent a timely Challenge, and to the extent such Challenge is unsuccessful, the Debtor's admissions will bind its estate and parties in interest. Any such Challenge must be asserted no later than (i) 75 days after the Petition Date, and (ii) 60 days after the appointment of such Committee.

### 2. Delaware Bankruptcy Local Rule 4001-2(a) Disclosures

13. Local Rule 4001-2(a) of the United States Bankruptcy Court for the District of Delaware requires that all financing motions highlight whether the proposed form of order or underlying stipulation or loan agreement contains any of certain disfavored provisions.

14. Local Rule 4001-2(a)(i)(C) requires the Debtor to disclose provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c). Although the proposed Final DIP Order will provide for a waiver of rights under Section 506(c), such rights are not waived in the Interim Order. The proposed waiver of the Debtor and estate' rights under Section 506(c) will be effective only after notice to parties in interest and entry of the Final Order granting such relief. (See Interim Order ¶¶ 34, 41.)

15. Local Rule 4001-2(a)(i)(F) requires the disclosure of any provisions in the Interim DIP Order providing disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional carve-out. The carve-out being provided for in the Interim Order and Budget is applicable to both the Debtor's and the Committee's professionals. However, no more than $20,000.00 of the proceeds of the DIP Financing, may be used to fund an investigation of the Lender by the Committee. (See Interim Order ¶ 30) Accordingly, all professionals retained by this estate will be treated fairly.

16. Local Rule 4001-2(a)(i)(G) requires the disclosure of provisions that prime any secured lien without the consent of the primed lienor. The Debtor notes that, although the Interim DIP Order grants priming liens pursuant to Section 364(d) of the Bankruptcy Code, the only liens primed under the Interim Order are the Pre-Petition Liens held by the same Lender

that will hold the Post-Petition Liens. Accordingly, the Interim DIP Order does not affect any priming without the consent of the primed lienor.

## APPLICABLE AUTHORITY

### A. The DIP Facility Should Be Approved

17. Section 364(c) of the Bankruptcy Code provides that if a debtor-in-possession is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor-in-possession to obtain credit or incur debt:

    a. with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; or

    b. secured by a lien on property of the estate that is not otherwise subject to a lien; or

    c. secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

18. Pursuant to section 364(d) of the Bankruptcy Code, a debtor-in-possession may also grant liens and security interests in all or a part of its assets that are prior and superior to all other liens or security interests therein.

19. Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

\* \* \*

    (2) <u>Hearing</u>. The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expire, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final

hearing.

Fed. R. Bankr. P. 4001(c). Accordingly, the Court is authorized to grant the relief requested.

20. Courts have articulated a three-part test to determine whether a debtor may obtain financing under §364(c) of the Code: (i) the debtor is unable to obtain unsecured credit under Section 364(b) (i.e., by granting a lender administrative expense priority); (ii) the credit transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor and the proposed lender. In re Aqua Associates, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit required is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere."); In re Ames Department Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (holding that financing will not be approved where "it is apparent that the purpose of the financing is to benefit a creditor rather than the estate" and that the debtor must show that it has made a reasonable effort to seek other sources of financing under Sections 364 (a) and (b) of the Bankruptcy Code).

20. Pursuant to Section 364(d)(1) of the Code, a debtor can also obtain financing on a superpriority or priming basis over other secured creditors. In order to obtain superpriority financing, the debtor must show that the interest of the holder of the lien on the property on which the senior priority lien is proposed to be granted is adequately protected. In re Swedeland Development Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994). The Bankruptcy Code does not expressly define adequate protection, but section 361 provides that adequate protection can be

provided by periodic cash payments, additional replacement liens, or other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. Swedeland, 16 F.3d at 564. "Whether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value caused by the superpriority given to the post-petition loan." Id.

21. The Debtor believes that the terms of the Interim Order are appropriate and reasonable and, thus, the Debtor submits that its reasonable business judgment should be approved. See In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983)("[B]usiness judgments should be left to the board room and not to this Court."). See also, In re Trans World Airlines, Inc. (TWA v. Travelers Int'l A.G.), 163 B.R. 964, 974 (Bankr. D. Del. 1994)(noting that the interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interests of TWA and its creditors."); In re TM Carlton House Partners, LTD, 91 B.R. 349, 358 (Bankr. E.D. Pa. 1988)(holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts.); cf., In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985)("Business judgments should be left to the board room and not to this Court."); In re Curlew Valley Assocs., 14 B.R. 506, 513-514 (Bankr. D. Utah 1981)(holding that courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor-in-possession's] authority under the [Bankruptcy] Code").

22. The purpose of the DIP Financing is to provide the Debtor with sufficient liquidity to operate its business.

23. The terms and provisions of the DIP Financing have been negotiated at arms' length and in good faith by the Debtor and the Lender. The form of DIP Financing proposed by the Lender is as set forth in <u>Exhibit A</u>. In addition, the terms and provisions of the DIP Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the needed post-petition financing.

24. The DIP Financing under the Interim Order will enable the Debtor, among other things, to (a) avoid the cessation of the Debtor's operations, (b) maintain the continuity of its operations, (c) enable certain employee benefits to be paid, and (d) maximize the value of its business and properties. In addition, the availability of credit under the DIP Financing should instill confidence in customers and employees, and encourage them to continue to work with the Debtor towards a successful reorganization under Chapter 11 of the Bankruptcy Code.

25. Accordingly, the Debtor believes that approval of the DIP Financing is in the best interests of its estate, its creditors and all parties in interest, and that the Court should therefore grant the Motion and authorize the Debtor to enter into the DIP Financing.

26. Inasmuch as the terms and conditions of the DIP Financing are fair and reasonable, and were negotiated by the parties in good faith and at arms' length, the Lender should be accorded the benefits of §364(e) of the Bankruptcy Code.

### B. The Debtor Should Be Permitted to Make Interim Borrowings Under the DIP Facility

27. Pending a final hearing on this Motion, the Debtor requires the ability to obtain immediate credit under the DIP Financing (i) on an interim basis pending the Final Hearing in the amount of up to $300,000.00. Such credit is needed to satisfy the Debtor's obligations in connection with the operation of its business. The immediate and irreparable harm that could result in the absence of approval of interim financing is inimical to the interests of all concerned.

28. Therefore, to enable the Debtor to maintain operations and to prevent immediate and irreparable harm to its business pending a final hearing on this Motion, interim financing requested herein should be authorized by this Court.

### Notice With Respect to Interim Order

29. Notice of this Motion has been given by facsimile or overnight mail to the following parties or, in lieu thereof, to its counsel, if known: (1) the United States Trustee; (2) the Debtor's 20 largest creditors and (3) the Lender. The Debtor submits that under the circumstances such notice is adequate.

### Notice With Respect to Final Financing Order

30. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case. The Debtor, pursuant to Bankruptcy Rule 4001, shall provide notice of the Motion, together with a copy of the Interim Order and the proposed form of Final Order to the parties listed above. The Debtor respectfully requests that it be authorized to serve a copy of the signed Interim Order that fixes the time and date for filing with objections, if any, by first class mail upon (i) counsel to any official committee of unsecured creditors appointed in this case; (ii) the Office of the United States Trustee; (iii) all parties who have filed requests for notice under Bankruptcy Rule 2002; (iv) the twenty (20) largest unsecured creditors of the Debtor at their last known addresses; (v) all parties that have filed with the clerk's office notices of appearance and requests for notices, and (vi) the Lender. The Debtor requests that the Court consider such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order substantially in the form of the Interim Order attached hereto; (ii) schedule the Final Hearing,

(iii) after the Final Hearing, enter a Final Order substantially in the form of the Interim Order and as filed with the Court prior to the Final Hearing; and (iv) grant such other and further relief as is just and proper.

Dated: August 19, 2009  
       Wilmington, Delaware

CROSS & SIMON, LLC

By: _____
Christopher P. Simon (No. 3967)
Kevin S. Mann (No. 4576)
Joseph Grey (No. 2358)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
Tel: (302) 777-4200
Fax: (302) 777-4224
csimon@crosslaw.com
kmann@crosslaw.com
jgrey@crosslaw.com

*Proposed Counsel for Debtors and Debtors in Possession*